THE STATE, EX REL. GREEN ET AL., *v.* CASEY ET AL.

[Cite as State, ex rel. Green, *v.* Casey (1990), 51 Ohio St. 3d 83.]

(No. 90-559—Submitted April 17, 1990—Decided April 30, 1990.)

*LeRoy A. Nichols,* for relators.

*Michael Miller,* prosecuting attorney, *William B. Shimp* and *Harland H. Hale,* for respondents.

*Per Curiam.* Motions to dismiss test the sufficiency of the complaint. *Assn. for the Defense of the Washington Local School Dist.* v. *Kiger* (1989), 42 Ohio St. 3d 116, 537 N.E. 2d 1292. In their motion, however, respondents argue that relators' complaint should be dismissed due to laches.

Respondents rely principally on *State, ex rel. Hinkle,* v. *Franklin Cty. Bd. of Elections* (1989), 47 Ohio St. 3d 117, 548 N.E. 2d 231, in which we denied a writ of mandamus because a relator unjustifiably waited to file an election matter until after the absentee ballots were printed and mailed. See Section 11, Rule VIII of the Supreme Court Rules of Practice. Here, the record contains no evidence showing unjustifiable delay or that absentee ballots had been mailed when relators' complaint was filed. Thus, we are not persuaded to deny relief in this case on *Hinkle*'s authority. Moreover, we did not dismiss the complaint in *Hinkle* as insufficient. Thus, we overrule respondents' motion to dismiss.

Beyond this, we note that respondents elected to file a motion to dismiss, rather than answer according to the abbreviated schedule for disposing of election matters set forth in Section 11, Rule VIII. In *State, ex rel. Beck,* v. *Casey* (1990), 51 Ohio St. 3d 79, 554 N.E. 2d 1284, decided today, we held that when a respondent in an election matter files a motion to dismiss instead of immediately answering the complaint, he does so at the risk of having the court accept the relator's factual allegations as true in deciding whether relief should be granted. Thus, pursuant to *Beck,* we accept relators' version of the facts in this case and proceed to the ultimate issue — whether respondents flagrantly misinterpreted a statute or clearly disregarded statutes or applicable legal provisions and, thus, abused their discretion by rejecting relators' declaration of candidacy and petition papers. *State, ex rel. Senn,* v. *Bd. of Elections* (1977), 51 Ohio St. 2d 173, 5 O.O. 3d 381, 367 N.E. 2d 879. Moreover, we view the case in light of the public policy favoring free competitive elections. See *State, ex rel. Beck,* v. *Casey, supra.*

We find that the board properly rejected the declaration of candidacy and petition papers submitted by relators

Green, Burkey, Woodall and Dinnell. Green's petition was invalidated because she, like the other relators, needed five valid signatures to qualify for placement on the primary ballot, R.C. 3513.05, but one of her five signers was not registered to vote, and another signer's name was printed, not written in cursive. Burkey's petition was also invalidated because one of the signatures on it was printed. Respondents had authority to invalidate these signatures under R.C. 3501.38(A), which requires signers to be registered electors, and R.C. 3501.38(B) ("Each signer may also print his name, so as to clearly identify his signature"), which implicitly requires signatures to be written in cursive.

Woodall's declaration of candidacy and petition papers were rejected because she did not indicate her voting residence on them as being the residence that was registered with the board of elections. Only persons who possess the qualifications of an elector may be elected to office in this state, Section 4, Article XV of the Ohio Constitution, and a person is not a qualified elector unless his actual current address is registered with the board of elections, *In re Protest Filed by Citizens for the Merit Selection of Judges, Inc.* (1990), 49 Ohio St. 3d 102, 104, 551 N.E. 2d 150, 153. Under this authority, respondents did not abuse their discretion by rejecting Woodall's filings.

Dinnell's petition was invalidated mainly because one signer did not correctly identify his voting residence. R.C. 3501.38(C) requires signers to place on a petition their voting residence, *i.e.,* the residence on file with the board of elections. *In re Protest, supra.* As Dinnell's signer did not do this, respondents were authorized to reject his declaration of candidacy and petition papers.

In contrast, we can find no justification for respondents' rejection of the declaration of candidacy and petition papers filed by relators Beatty, Sapp, Matheson, Feierabend, Harbaugh, Greenwood and Laipply. Beatty's petition was invalidated because he corrected the signature total listed on his circulator's affidavit. R.C. 3501.38(E) and 3513.07 (declaration of candidacy and petition forms with which candidates must substantially comply) require a circulator to indicate on each petition paper the number of signatures it contains, but these statutes do not expressly forbid or permit corrections. However, by providing that "[n]o * * * corrections * * * may be made to a petition after it is filed in a public office," R.C. 3501.38(I) implies that some corrections are permitted beforehand.

Moreover, in *State, ex rel. Saffold,* v. *Bd. of Elections* (1970), 22 Ohio St. 2d 63, 51 O.O. 2d 95, 258 N.E. 2d 112, we held that the standard for reviewing technical defects in declaration of candidacy and petition papers is whether the defect could cause a signer to be deceived or misled. Correcting an error in arithmetic after a petition has been signed is such a technical defect, and it can not deceive or mislead the signers. Thus, Beatty's filings should not have been invalidated because he corrected the signature total on a petition.

Similarly, Sapp's petition was invalidated because his declaration of candidacy was first completed in pencil, erased, and then completed again in ink. Matheson's petition was invalidated because he corrected the date on his declaration of candidacy. Neither of these actions tended to deceive or mislead the signers of the petitions. Thus, Sapp's and

Matheson's filings should also have been accepted as valid by respondents.

Feierabend's petition was invalidated because two signers were purportedly listed with the board of elections as members of a political party other than his, and Harbaugh's petition was invalidated because two signers later signed a petition of a candidate belonging to a party other than hers. Feierabend's two signers, however, have not voted in a primary election since 1976. Thus, respondents should have considered these signatures to be valid under R.C. 3513.05 ("For purposes of signing * * * a petition of candidacy for party nomination or election, an elector is considered to be a member of a political party if he voted in that party's primary election within the preceding two calendar years, or if he did not vote in any other party's primary within the preceding two years."). Similarly, as Harbaugh's two signers had not declared their party affiliation and they signed her petition first, respondents had no reason to invalidate these signatures on her petition.

Greenwood's petition was invalidated because two signers were purportedly not registered to vote. However, Greenwood asserts that these signers were registered and respondents have not denied this. As R.C. 3501.39 requires respondents to accept any unprotested petitions that do not violate statutory or other law, respondents should have accepted Greenwood's filings.

Finally, Laipply's declaration of candidacy and petition papers were invalidated because she did not indicate on them both her married name and her maiden name, the name she has used since her divorce. Under R.C. 3513.06, a candidate must indicate on these papers any name changes within the preceding five years, but name changes "by reason of marriage" are excepted. Since Laipply now uses her maiden name because she is no longer married, this name change resulted for a reason related to marriage and is within the statute's exception. Thus, respondents should have also accepted Laipply's filings.

Based on the foregoing, we hold that respondents properly rejected the declaration of candidacy and petition papers of Green, Burkey, Woodall and Dinnell, but that they abused their discretion by rejecting those of Beatty, Sapp, Matheson, Feierabend, Harbaugh, Greenwood and Laipply. As respondents have not suggested the availability of another adequate remedy, we also hold that a writ of mandamus is appropriate. Accordingly, we allow a writ of mandamus requiring respondents to place the names of Beatty, Sapp, Matheson, Feierabend, Harbaugh, Greenwood and Laipply on the ballot as candidates for the office of ward committee person on the county central committee of their respective political parties.

*Judgment accordingly.*

•

MOYER, C.J., SWEENEY, HOLMES, WRIGHT, H. BROWN and RESNICK, JJ., concur.

DOUGLAS, J., concurs in part and dissents in part.

DOUGLAS, J., concurring in part and dissenting in part. I would grant the writ as to all relators. We should be encouraging interested citizens to participate in the political process. We should not, using inappropriate technicalities, prohibit or discourage those who choose to be of service.